# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

IN RE THE APPLICATION OF

| | |
|---|---|
| CHRISTIAN LOCATELL,<br>  Petitioner, | )<br>)<br>)   CIVIL ACTION FILE<br>)   NO.: |
| v. | ) |
| HOLLY JOY LOCATELL,<br>  Respondent. | )<br>)<br>) |

## VERIFIED PETITION FOR RETURN OF MINOR CHILDREN PURSUANT TO THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION

The Petitioner, CHRISTIAN LOCATELL (hereinafter "Locatell" or "the Father"), by and through the undersigned counsel and pursuant to the International Child Abduction Remedies Act (hereinafter "ICARA," 22 U.S.C. § 9001 *et seq.*), files this Verified Petition seeking the return of his four children, to wit: C.L., male, B.L., male, I.L., female, and T.L., male, to the United Kingdom of Great Britain and Northern Ireland, (hereinafter "United Kingdom or UK"), from which country the Mother, Respondent HOLLY JOY LOCATELL (hereinafter "the Mother") wrongfully removed the children. Petitioner respectfully seeks judicial resolution of this Petition within six weeks, as provided for by the Hague Convention. In support of his Petition, the Father states as follows:

## I. INTRODUCTION

1. The Father, a resident of the United Kingdom, is the legal and natural parent of the following minor children: C.L., male, born (███████), B.L., male, born (███████), I.L., female, born (███████) and T.L., female, born (███████). All of the subject minor children are under the age of sixteen (16). The Petitioner is listed as the father on each of the children's birth certificates. The Father is married to the Mother; all four children were born of the marriage.

2. The Father requests the return of his four children, C.L., B.L., I.L., and T.L., who were wrongfully removed from the United Kingdom and retained by the Mother in Florida.

3. The Father is a postdoctoral researcher associate at the University of Cambridge, United Kingdom. The Father, Mother, and all four children have resided with the intent to remain permanently in the United Kingdom since October 2021. The parties are married and resided at 8 Kettles Close, Cambridge, CB24 3XA United Kingdom. The Father still resides at this location.

4. In November 2023, the Father and Mother were experiencing marital discord. When the Mother made statements she wanted to take the children to her parents' home in Florida, United States of America, the Father advised the Mother that he did not consent to the children leaving the UK and expressly communicated his objection to any unilateral removal of the children from the UK.

5. On December 4, 2023, the Mother, accompanied by the children's maternal grandfather, unilaterally removed the children from the UK without advance

notice to or consent from the Father. It was later revealed that the Mother and the four children are residing at 19 Spring Glen Drive, Debary, Florida 32713, with the maternal grandparents.

6. This Petition is brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980[1] ("Hague Abduction Convention" or "Convention"), its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), and Chapter 61, Florida Statutes.

7. The Hague Abduction Convention came into effect in the United States on July 1, 1981, and entered into effect between the United States and the UK, the habitual residence of the minor children, on July 1, 1988.

8. The Convention is a treaty between multiple signatory countries ("Contracting States") wherein the countries agree to cooperate for the specific purpose of returning children to their home country for custody proceedings. Proceedings under the Convention simplify the reunification of parents with their children who have been illegally removed from their home country. The objects of the Convention are: (1) to secure the immediate return of a child wrongfully removed to or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.

---

[1] Available at http://www.hcch.net/index_en.php?act=conventions.text&cid=24 (last visited April 29, 2024).

9. The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

10. The Hague Abduction Convention provides that "[t]he removal or the retention of a child is to be considered wrongful where — (a) it is in breach of rights of custody attributed to a person under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention, art. 3. "The removal of a child from the country of its habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." *Friedrich v. Friedrich*, 78 F.3d 927, 936 (11th Cir. 1998). Similarly, "wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and, at the time of retention, these rights were actually exercised, or would have been so exercised, but for the wrongful retention. *Feder v. Evans-Feder*, 63 F.3d 217, 225 (3d Cir. 1995); *Wanninger v. Wanninger*, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

11. ICARA (22 U.S.C. § 9001 *et seq.*) establishes the Convention as the law of the United States and provides the implementing legislation to enforce its

4

provisions. ICARA authorizes state courts to consider international case law applying the Hague Abduction Convention due to a "need for uniform international interpretation of the Convention" to promote its effectiveness. 22 U.S.C. § 9001(b)(3)(B).

12. Once a party has established that removal or retention was wrongful, Article 13 of the Hague Abduction Convention requires the mandatory return of the child to the home state unless a limited exception applies.

13. As speedy resolution of return applications is essential to the operation of the Convention and prevents further harm to the child wrongfully removed or retained from the left-behind parent, Hague Abduction Convention cases are summary proceedings which require judicial resolution within six (6) weeks of commencement. Convention, art. 7. Should the court not resolve the proceedings within six weeks, "the applicant of the Central Authority . . . shall have the right to request a statement of the reasons for the delay." Convention, art. 11.

14. The Hague Convention authorizes this Court to determine the merits of the Petitioner's claim for wrongful retention of C.L., B.L., I.L., and T.L.; it does not, however, permit the Court to consider the merits of any underlying custody dispute. Thus, this Petition is to enforce an international treaty and the related law concerning jurisdiction. **This is not a child custody case and the best interest standard does not apply to this Court's determination of the proper jurisdiction.**

15. This Court must return C.L., B.L., I.L., and T.L. to the United Kingdom because, under the Convention and ICARA, a preponderance of the evidence

5

establishes that: (1) the children are under the age of 16; (2) the United Kingdom was the habitual residence of the children at the time the Mother abducted C.L., B.L., I.L., and T.L. by removing or retaining them in the United States in December, 2023; (3) the removal or retention of the children in the United States is in breach of the Father's rights of custody under English law; and (4) the Father was exercising his rights of custody at the time the Mother wrongfully removed or retained C.L., B.L., I.L., and T.L. to the United States. The United Kingdom is the country that, under the Convention, should make custody determinations.

## II. Jurisdiction

16. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.")

17. Venue is proper in Volusia County, Florida, pursuant to Fla. Stat. § 47.011 and 22 U.S.C. § 9003(b), where the children are currently staying.

18. A decision under the Convention is not a determination of the custody of the minor children, pursuant to Article 19 of the Convention and 22 U.S.C. § 9001(b)(4), as this Court does not have jurisdiction to hear any underlying custody dispute. Article 16 of the Convention specifically bars this Court from even considering the merits of custody in favor of either parent once it has received notice of the wrongful removal or retention. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998).

### III.   Status of Petitioner and Child

19.   The Father is a citizen of the United States of America. The Father, Mother and minor children have all lawfully resided in the UK where the Father has lived and worked since 2021.

20.   The Mother is a citizen of the United States of America and Brazil. At the time of the Mother's abduction of the children, the Mother and the children's habitual residence was the UK, where she has lived with the Father since 2021.

21.   At the time of the Mother's abduction with the children, the parties were actively participating in the renewal of their UK residency visas for the Father, Mother, and children.

22.   The parties were married on May 27, 2007, in California. The parties' two (2) children, C.L. and B.L. were born in the United States. Shortly after C.L. and B.L. were born, the family moved to South Africa, where they remained until 2017. In 2017 the family moved to Jerusalem where the other two (2) children were born, I.L. and T.L. In 2021, the family moved to the UK, where they remained living together until December 2023, when the Mother unilaterally removed the children and fled to Florida. A copy of the birth certificates for C.L. and B.L. are attached hereto as Exhibit "A"[2]. The Mother is in possession of the Jerusalem birth certificates for I.L. and T.L.

---

[2] See 22 U.S.C. § 9003, which provides that no authentication of documents included with an application or petition is required for the documents to be admissible in Court.

23. I.L. and T.L. were born in Jerusalem and have never resided in the United States.

24. At the time of the Respondent's wrongful removal and retention of C.L., B.L., I.L., and T.L. (as specifically set forth in Part IV below), the Father was actually exercising custody rights within the meaning of Articles 3 and 5 of the Convention, as well as English law. (Attached hereto as Exhibit "B"). It is undisputed that Locatell is the legal and natural father of the children, that he has regularly and consistently exercised his custodial rights to the children since their birth, and that he has provided financially for the daily care and well-being of the children.

25. Furthermore, C.L., B.L., I.L., and T.L. were habitually residents in the UK within the meaning of Article 3 of the Convention from 2021 until their wrongful removal to the United States on December 4, 2023.

26. The children attended school in the United Kingdom and their pediatricians were located in the UK as evidenced by the doctor's appointment scheduled for I.L. on December 18, 2023, attached hereto as Exhibit "C".

27. The Father has been involved in all aspects of the life of his children and has consistently exercised his custodial rights through his involvement with C.L., B.L., I.L., and T.L. Photographs demonstrating the Father's involvement with the child are attached hereto as Composite Exhibit "D".

28. The Father has requested the return of C.L., B.L., I.L., and T.L. back to the United Kingdom pursuant to his ICACU Application filed with the Official

Solicitor, which was sent to the U.S. Department of State, the Central Authority of the United States under the Convention attached hereto as Exhibit "E".

29. At the time immediately before the wrongful removal and retention of C.L., B.L., I.L., and T.L., the children habitually resided in the United Kingdom within the meaning of Article 3 of the Convention. At the time of the Father's application to the Official Solicitor's Office and to the U.S. Department of State, the Father resided in the Contracting State of the United Kingdom.

## IV. Wrongful Removal and Retention of Child by Respondent

30. The Father has rights of custody under English law.[3] The law presumes that parental custody shall be shared by the parents if they are married to one another at the date of the birth of the child. Parental custody is the set of rights and duties which the law accords to parents with respect to the care of the person and property of their minor children.

31. The removal and retention of the children in the United States is in violation of the Father's rights of custody to the children. The Mother failed to notify the Father of her intent to permanently remove the children from their habitual residence in the UK and continues to wrongfully withhold the children in violation of the Father's custodial rights pursuant to English law. The unilateral removal and retention of C.L., B.L., I.L., and T.L. is therefore in violation of English civil and criminal law and is a wrongful removal and wrongful retention within the meaning of

---

[3] This court "may take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law." Convention, art. 14.

Articles 3 and 5 of the Convention. Pursuant to section 2(1) of the Children Act 1989, "a person connected with a child under the age of sixteen commits an offense if he takes or sends the child out of the United Kingdom without the appropriate consent". (See attached hereto Exhibit "F").

32. The Mother has wrongfully removed C.L., B.L., I.L., and T.L. from the UK and continues to wrongfully retain C.L., B.L., I.L., and T.L. in the United States. During this time, the Father has had minimal contact with only one of his children by telephone, as controlled by the Mother. The Father has not seen his children since their unlawful removal and retention in the United States.

33. The Father has never—at any time— acquiesced or consented to the retention of C.L., B.L., I.L., and T.L. outside of the UK. He has made good faith efforts to secure the return of the children since the Mother removed the children on December 4, 2023, but the Mother has flatly denied his requests. His efforts to obtain the return of the children to the UK have been consistent and persistent throughout the wrongful removal and retention of the children. The Mother has made it abundantly clear to the Father that she will not voluntarily return C.L., B.L., I.L., and T.L. to the United Kingdom. In fact, the U.S. Department of State sent a Voluntary Return Letter to the Mother on December 22, 2023. Upon information and belief, the Mother has never responded back to the U.S. Department of State. (Attached hereto as Exhibit "G").

34. The Respondent has wrongfully removed and retained C.L., B.L., I.L., and T.L. from the Father in Volusia County, Florida, within the meaning of Article 3

of the Convention. She continues to wrongfully retain C.L., B.L., I.L., and T.L. in the United States despite the Father's efforts to secure the child's return to the UK.

35. In light of the English law and the Hague Abduction Convention, C.L., B.L., I.L., and T.L. are currently being illegally held in custody, confinement, and/or restraint by the Mother. Unless this Court takes immediate action to bring the Mother and C.L., B.L., I.L., and T.L. before the Court, the children will continue to suffer irreparable harm in that they are denied all proper access to their father and to their home, family, and culture as a result of their wrongful retention in Florida. Unless an order to show cause is entered, the Father will continue to have little meaningful contact with his children.

36. The children are presently in Volusia County, Florida, United States of America.

37. At the time of application to the U.S. Department of State and at the time of filing this Petition, the Mother resides in Volusia County, Florida, United States of America.

## V. Provisional Remedies

38. The Father requests that the Court issue an Ex-Parte Order to Show Cause to be served immediately on the Mother and that she be directed to appear promptly with C.L., B.L., I.L., and T.L. before this Court. Section 5(b) (Provisional Remedies) of ICARA provides that, in a proceeding under Section 4(b) for the return of a child, '[n]o court exercising jurisdiction . . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of

State law are satisfied." 22 U.S.C. § 9004. In this case, the state law referred to in Section 5(b) is the Florida Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA," Fla. Stat. § 61.523), which authorizes this Court to order the immediate appearance of the Mother and C.L., B.L., I.L., and T.L.

39. The Father requests that this Court issue, along with an Order to Show Cause, an Order prohibiting the removal of C.L., B.L., I.L., and T.L. from the jurisdiction of this Court during the pendency of the proceedings in this Court, taking into safekeeping all of the Mother's travel documents and the travel documents for the children, including their passports, and setting an expedited hearing on this Petition.

40. The Father further requests, for the well-being of C.L., B.L., I.L., and T.L., that this Court provide him access to the children for their immediate return to the United Kingdom.

## VI. Attorney's Fees and Costs, Including Transportation Expenses

41. The Father has incurred and continues to accrue substantial expenses, including legal fees and costs, as a result of the Mother's wrongful removal and retention of the children. The Father will submit a copy of all expenses upon request of the Court as soon as practicable and possible and will amend these costs from time to time, according to proof and in light of further expenses that may be incurred as a result of the wrongful removal and retention.

42. The Father requests that this Court award to him all legal costs, fees, and other expenses the Father has and will incur to effect the child's return as required by Article 26 of the Convention and 22 U.S.C. § 9007. "Any court ordering the return of

a child pursuant to [ICARA] *shall order* the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees . . . and transportation costs related to the return of the child . . . ." 22 U.S.C. § 9007 (emphasis added).

### VII.   Declaration Pursuant to UCCJEA

43.   Florida law provides that this Court "shall treat a foreign country as if it were a state of the United States . . . A child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this part must be recognized and enforced . . . ." Fla. Stat. § 61.506. Under the UCCJEA, the United Kingdom is treated as a sister state for the purpose of establishing the English court's jurisdiction under its substantive state law.  As the United Kingdom is the habitual residence of C.L., B.L., I.L., and T.L. and of the Father, the United Kingdom has continuing and exclusive jurisdiction over the children that must be recognized and enforced by this Court. The law is clear that the mere physical presence of C.L., B.L., I.L., and T.L. within the State of Florida does not provide this Court with sufficient legal basis under the UCCJEA to resolve the parties' underlying child custody dispute in the United Kingdom.

WHEREFORE, the Petitioner, CHRISTIAN LOCATELL, respectfully requests this Honorable Court enter an Order granting the following relief:

A.   Issuing a Show Cause Order commanding the Respondent to appear with the children, C.L., B.L., I.L., and T.L., in this Court to show cause why the children should not be returned to the United Kingdom forthwith for the English court to make

any and all custody determinations, prohibiting the removal of the children from the jurisdiction of this Court pending the resolution of this Petition, and taking into safekeeping the passports of the Mother and children and other travel documents;

B.   Granting this Verified Petition and directing the prompt return of the children to their habitual residence of the UK for the English court to make any and all custody determinations;

C.   Directing the Respondent/Mother to pay the Petitioner/Father's reasonable legal costs, fees, and other expenses to effectuate the return of the children to the UK, and

D.   Awarding such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Respectfully submitted this April 29, 2024.

GFC LAW, PLLC
2700 W Cypress Creek Road
Suite D-107
Fort Lauderdale, FL 33309
Phone: (954) 635-2251
gary@gfclawfl.com
*Counsel for Petitioner/Father*

BY: /s/ *Gary F. Celetti, Jr.*
Gary F. Celetti, Jr., Esq.
Florida Bar No. 1017756

I, CHRISTIAN LOCATELL, do solemnly declare and affirm under the penalties of perjury under the laws of the State of Florida that the factual statements made in the foregoing Verified Petition are true and correct.

Executed on this 29th day of April, 2023.


*Christian Locatell*
Christian Locatell (Apr 29, 2024 13:43 CDT)

CHRISTIAN LOCATELL